# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1017

_____

United States of America,            *
                                            *

      Appellant,               *    Appeal from the United States
                                            *    District Court for the
           v.                 *    Eastern District of Arkansas
                                            *

Mary Jane Johnson;          *
Rickey Joe Bradshaw,       *    [PUBLISHED]
                                            *

      Appellees.               *

_____

Submitted: September 15, 2000

Filed: October 10, 2000

_____

Before BOWMAN, BEAM, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Six days before trial, the government informed counsel for defendants Mary Jane Johnson and Rickey Joe Bradshaw that it intended to elicit expert testimony at trial. The defendants immediately moved to suppress that expert evidence. The district court concluded that the government had reneged on a promise to provide expert testimony in discovery, and granted defendants' motion to suppress. The court then stayed the trial so the government could pursue this interlocutory appeal. We reverse.

## BACKGROUND

A grand jury in the Eastern District of Arkansas indicted Johnson and Bradshaw (along with others not party to this appeal) on February 10, 1999. The indictment charged them with a single count of conspiracy to distribute methamphetamine in violation of 18 U.S.C. § 846.

Johnson and Bradshaw were represented by separate counsel. On May 18, 1999, Bradshaw filed a motion requesting discovery from the United States Attorney's office. The motion sought information pertaining to statements made by the defendants, the defendants' prior criminal records, documents and other objects relied upon by the government, and scientific or medical reports or examinations. The request for discovery tracked the language in Fed. R. Crim. P. 16(a)(1)(A)-(D).

On May 21, 1999, the government responded to the motion, agreeing to produce all of the information sought by Bradshaw. Although Bradshaw had not specifically asked the government to provide any "expert evidence,"[1] the government's response agreed to provide such evidence. The government sent an identical response to Johnson, although her lawyer had not moved for discovery.

On June 16, 1999, the court ordered discovery in accordance with the government's response. The order provided that "the Government, by its Responses, has agreed to comply with, or exceed, the requirements of Rule 16 . . . [t]he Government is hereby ordered to provide what it has agreed to do in its Responses."

After several continuances, the trial was scheduled for December 16, 1999. The Friday before trial, December 10, the Assistant United States Attorney (AUSA) faxed

---

[1]Bradshaw's lawyer later conceded, while arguing the motion before the district court, that he had neglected to request disclosure of expert evidence.

a letter to counsel for Johnson and Bradshaw.  That letter disclosed, for the first time, the government's intention to call DEA Agent Roger Case as an expert witness.  The letter stated that Agent Case would testify about the methods of distribution employed by methamphetamine gangs, indicia of distribution, the street values of methamphetamine, and several other matters.

Agent Case had worked on the investigation and prosecution of Johnson and Bradshaw, and the defendants knew that Case would testify at trial as a fact witness. But the defendants did not know that Case would be called to opine as an expert.  On December 13, the first working day after receiving the AUSA's faxed letter, Johnson and Bradshaw jointly moved to suppress Agent Case's proposed expert testimony. The defendants argued that the government had violated Rule 16(a)(1)(E) by failing to disclose Agent Case as an expert in response to the May 18 discovery demand.  In addition, the defendants pointed to the government's May 21 response, in which the government agreed to disclose "expert evidence."

Two days before trial, the district court held a telephone conference regarding the defendants' motion.  The court granted the defendants' motion and excluded Agent Case's proposed expert testimony, finding that the government had broken its promise to reveal any expert testimony in its May 21 response to Johnson and Bradshaw.  The next day, the government filed a motion for reconsideration; the court denied that motion after a further telephone conference.  The government then filed this interlocutory appeal, and the district court stayed the trial pending its outcome.

## JURISDICTION

Johnson and Bradshaw challenge our exercise of appellate jurisdiction.   We must, of course, establish a proper basis for jurisdiction before analyzing the merits of a case.  See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 95 (1998).

Section 3731 of Title 18 permits the government to pursue an interlocutory appeal from an order suppressing evidence upon satisfaction of three requirements:

(1) the defendant has not been put in jeopardy;
(2) the appeal is not taken for purpose of delay; and
(3) the evidence is a substantial proof of a fact material in the proceeding.

Johnson and Bradshaw do not challenge the government's compliance with the first two requirements, non-jeopardy and lack of delay. Rather, they concentrate their attack on the third element, materiality. They interpret § 3731 to require an independent evaluation of the "materiality" of the facts prompting the government's appeal. Employing that standard, they contend that Agent Case's expert opinion is not material to the government's case-in-chief, and they therefore conclude that our jurisdiction is lacking.

We have not previously had occasion to examine what showing must be made to permit an interlocutory appeal under this portion of § 3731. Other circuits have split on this question. The Ninth Circuit, apparently alone, requires the government to prove that the evidence suppressed by the district court is actually "material" to the upcoming trial. Sitting en banc, the Ninth Circuit held that

> [o]ne of the conditions [for appeal via § 3731] is that the evidence suppressed must be substantial proof of a fact material in the proceeding. This condition must be met before appeal of the suppression order can properly be taken. . . . [T]he suppressed evidence (dynamite) is not substantial proof of any material fact in the nondynamite counts of the indictment. The trial court found as much. Given the government's failure to satisfy this condition, its appeal of the suppression order as it relates to the nondynamite counts was improper.

United States v. Loud Hawk, 628 F.2d 1139, 1150 (9th Cir. 1979) (en banc); see United States v. Adrian, 978 F.2d 486, 490 (9th Cir. 1992).

In contrast, at least two other circuits have decided that appellate jurisdiction is proper if the government simply certifies that the evidence suppressed is substantial proof of a material fact. These circuits suggest that a court of appeals need look no further than the existence of an executive certification that the evidence suppressed is material. See United States v. Kepner, 843 F.2d 755, 761 (3d Cir. 1988); In re Grand Jury Investigation, 599 F.2d 1224, 1226 (3d Cir. 1979) ("Pursuant to 18 U.S.C. § 3731, the United States Attorney has certified that this appeal 'is not taken for the purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.' The district court having received this certification, we are not required by section 3731 to evaluate independently the substantiality or the materiality of the contested material."); United States v. Comiskey, 460 F.2d 1293, 1297-98 (7th Cir. 1972).

Although we have not adopted a position, one of our prior cases suggested (purely in dictum) that we would follow the latter approach. See United States v. Juvenile Male J.A.J., 134 F.3d 905, 907 (8th Cir. 1998) ("Other unreviewable acts of prosecutorial discretion include . . . a United States Attorney's certification under 18 U.S.C. § 3731 that an appeal from an adverse suppression ruling is not taken for purposes of delay and involves evidence material to the proceedings") (citing Kepner, 843 F.2d at 761).

A textual analysis of § 3731 supports the latter approach, requiring only executive certification to establish appellate jurisdiction. The second and third requirements (lack of delay and materiality) share the common modifying phrase, "if the United States attorney certifies to the district court." See 18 U.S.C. § 3731. The syntax implies that executive certification establishes both lack of delay and materiality. Further, the "lack of delay" and "materiality" elements of § 3731 are joined in parallel structure, demarcated by two instances of the word "that." See id. § 3731 ("if the United States attorney certifies to the district court *that* the appeal is not taken for purpose of delay *and that* the evidence is a substantial proof of a fact material in the

proceeding.") (emphasis added).  The language of § 3731 implies that mere certification is required to demonstrate materiality.

The government's Notice of Appeal states that "[t]he United States Attorney hereby certifies that this appeal is not taken for the purpose of delay and that the evidence excluded is a substantial proof of facts material in the proceeding."  In light of our conclusion above, we need not examine whether Agent Case's expert testimony would actually be substantial proof of a material fact.  The government has so certified; that suffices.[2]  We have jurisdiction to hear this interlocutory appeal.

## DISCUSSION

We review for an abuse of discretion a district court's decision to sanction the government for discovery violations.  See United States v. DeCoteau, 186 F.3d 1008, 1009 (8th Cir. 1999).

### A.     Defendants' Right to Discovery

Criminal defendants do not have a general constitutional right to discovery.  See Weatherford v. Bursey, 429 U.S. 545, 559 (1977).  In most circumstances, then, a defendant must point to a statute, rule of criminal procedure, or other entitlement to obtain discovery from the government.

The government acknowledges that Rule 16 permits a defendant to request disclosure of expert evidence upon which the government will rely at trial.  See Fed.

---

[2]At least one circuit has considered an interlocutory appeal from a district court's order suppressing expert drug testimony.  See United States v. Rodriguez, 192 F.3d 946, 949 (10th Cir. 1999).  To be fair, Rodriguez contains no discussion of appellate jurisdiction.  The Tenth Circuit implicitly assumed that jurisdiction was proper.

R. Crim. P. 16(a)(1)(E). But the government argues that "in the case at hand, neither Johnson nor Bradshaw requested pre-trial disclosure of expert witnesses," and thus the government's obligation to disclose was never triggered. The government is correct. Johnson never requested discovery. Bradshaw requested some discovery, but concedes that he did not ask for "expert evidence." Accordingly, neither Johnson nor Bradshaw triggered the government's disclosure obligation under Rule 16(a)(1)(E). See United States v. Salerno, 108 F.3d 730, 743 (7th Cir. 1997) (refusing to suppress the government's expert evidence because "[f]rom the record, it does not appear that the defendant ever requested any expert discovery material, as Rule 16 required him to do"); United States v. Haidara, No. 96-4305, 1997 WL 205378, at *1 (4th Cir. Apr. 28, 1997) (unpublished per curiam opinion) ("Haidara complains that he did not receive proper notice of Agent Winand's [expert] testimony prior to trial under Fed. R. Crim. P. 16(a)(1)(E). The rule, however, requires notice only when the defendant requests such disclosure, and Haidara does not even allege that he requested disclosure in this case.").

Although the government had no duty to disclose expert evidence under Rule 16, the government nevertheless represented to defense counsel that it would disclose expert evidence. In its May 21 response to Bradshaw's discovery demand (sent to counsel for both Johnson and Bradshaw), the government agreed to provide

> any statements made by the Defendant to government agents, the Defendant's criminal history, the government's tangible evidence, items which may be material to the defense, and scientific or *expert evidence*. (Emphasis added).

At the motion hearing before the district court, the AUSA attempted to downplay the importance of that statement. But the district court determined that

> under the rules you may well not have been required to disclose, but from my reading of your paragraph . . . you just make a flatfooted assertion that

you're going to provide expert evidence. I don't see how a lawyer could read that otherwise.

Moreover, the district court embodied the government's disclosure agreement in the June 16 order. By failing to disclose its expert evidence in timely fashion, the government neglected to comply with the court's order. We acknowledge that, strictly speaking, the court's order applied only to Bradshaw, not to Johnson. That doesn't change the fact that the government promised, in a response mailed *both* to Bradshaw *and* Johnson, that it would disclose its expert evidence. In sum, we agree with the district court: the government failed to keep its promise. But the government's broken promise doesn't end our inquiry.

## B.    Prejudice to the Defendants

The government contends that exclusion was unnecessary because neither Johnson nor Bradshaw suffered actual prejudice. See United States v. Valentine, 984 F.2d 906, 910 (8th Cir. 1993) ("Evidence should be excluded when the discovery rules have been violated in a manner that prejudices the defendant's substantive rights.") (citation omitted). The defendants contend that they would have hired an expert to rebut Agent Case's expert testimony if they had been informed of the government's intentions sufficiently in advance of trial.

We faced a similar situation in United States v. Ortega, 150 F.3d 937 (8th Cir. 1998), cert. denied, 525 U.S. 1087 (1999). In Ortega, the government failed to disclose its proposed experts before trial. Two law enforcement agents listed only as fact witnesses prior to trial were permitted to testify at trial as experts on drug transactions and paraphernalia. We affirmed the district court's decision to permit the agents' expert testimony for a variety of reasons. First, we recognized that expert evidence has become routine in drug cases. Second, we noted that Ortega had raised no objection to the substance of the agents' expert testimony, only to its untimely disclosure. Third,

Ortega failed to move for a continuance, thereby undercutting his claim of prejudice based on an inability to hire his own expert. Finally, Ortega's counsel had seen every exhibit which was the subject of the officers' expert testimony in the week prior to trial. See Ortega, 150 F.3d at 943-44. On this basis, we concluded that "Ortega has demonstrated no facts indicating that he was surprised or unfairly prejudiced by the substance of the officers' testimony." Id. at 944.

Though not all these factors are present in the instant case, we find Ortega to be persuasive authority. The proposed expert testimony of Agent Case (pertaining to drug transactions and drug paraphernalia) is the sort of "routine" drug expert testimony we permitted in Ortega. In addition, neither Johnson nor Bradshaw questions the admissibility of Agent Case's expert testimony. Both defendants protest only the government's untimely disclosure of that testimony. Although the defendants reluctantly moved for a continuance (unlike Ortega) when it initially appeared that the district court would allow Agent Case to testify as an expert, we do not believe that this distinction alone devalues our analogy to Ortega. Perhaps the most persuasive of these facts is the defendants' failure to object to Agent Case's expert conclusions. A claim of prejudice based on untimely disclosure is less convincing when unaccompanied by an objection to the object of that disclosure.

In any event — whether the government's failure to disclose Agent Case's expert status was truly prejudicial or not — the district court's failure to *identify* any prejudice to Johnson or Bradshaw was error. A district court's discretion in ruling on evidentiary matters is ample, but not unbounded. We have previously held that a district court abused its discretion by dismissing an indictment for a discovery violation without first establishing grounds for prejudice. See DeCouteau, 186 F.3d at 1010. Likewise, in this case, we believe that the district court abused its discretion by striking Agent Case's expert testimony without identifying or establishing any basis for prejudice, if such there was.

## C.    Least Severe Sanction

The government also argues that an exclusionary sanction was harsher than necessary. See DeCoteau, 186 F.3d at 1010 ("'When a court sanctions the government in a criminal case for its failure to obey court orders, it must use the least severe sanction which will adequately punish the government and secure future compliance.'") (quoting United States v. Hastings, 126 F.3d 310, 317 (4th Cir. 1997), cert. denied, 523 U.S. 1060 (1998)).

The government notes that the district court might have chosen alternative, less severe, sanctions. We agree. The district court could have continued the trial to permit Johnson and Bradshaw to hire their own expert. Or the court could have permitted the defendants to depose Agent Case to learn the gist of his proposed expert testimony. In any event, the court had an obligation at least to explore the possibility of less severe sanctions. The record reflects that the district court settled on an exclusionary sanction as soon as the government's broken promise was identified. Ignoring the very possibility of less severe sanctions constitutes a clear abuse of discretion. See DeCoteau, 186 F.3d at 1011 ("[T]he court also failed to engage in any analysis concerning whether a less severe sanction would have been sufficient to remedy any prejudice DeCoteau may have suffered.").

\* \* \*

We are somewhat sympathetic to the defense attorney's view that this appeal was unnecessary. At the suppression hearing, Johnson's lawyer ventured that the government had "so much evidence, I don't even know why [the AUSA] wants to use [expert testimony]." Be that as it may, the government may employ expert evidence in drug cases if it so chooses.

Our prior cases indicate that a district court must substantiate a defendant's claim of prejudice before adopting the most severe discovery sanction available — wholesale exclusion of evidence. We therefore reverse the district court's order.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.