```
                              _____

                              No. 95-3956
                              _____

United States of America,          *
                                   *
          Appellee,                *
                                   *
     v.                            *
                                   *
Travell L. Wilson,                 *
                                   *
          Appellant.               *    Appeals from the United States
                                        District Court for the
                                        Western District of Missouri.
                              _____

                              No. 96-1044
                              _____

United States of America,          *
                                   *
          Appellee,                *
                                   *
     v.                            *
                                   *
Earnest Watkins, Jr., also         *
known as June Bug,                 *
                                   *
          Appellant.               *


                              _____

          Submitted:  May 13, 1996

             Filed:  December 19, 1996
                              _____

Before BOWMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and
     WOLLMAN, Circuit Judge.

                              _____

HENLEY, Senior Circuit Judge.
```

Travell Wilson and Earnest Watkins, Jr. appeal from judgments of the district court[1] entered after a jury found them guilty of conspiracy to distribute cocaine and of aiding and abetting possession with the intent to distribute cocaine. We affirm.

As part of an ongoing investigation between the Drug Enforcement Administration and the Kansas City, Missouri Police Department, on June 23, 1993, in anticipation of executing a federal search warrant, law enforcement officers were conducting surveillance at the apartment of Kenneth Hulett. The officers saw Wilson and Watkins go into the apartment, and a short time later saw Wilson, who was carrying a black bag, and Watkins leave the apartment and get in a car. Officers followed the car and a chase ensued. Officers saw the car pull into a parking lot, and as the car slowed down, saw Wilson, who was carrying a black bag, get out of the car and run into a nearby wooded area. Watkins, who was the driver, was arrested after the car came to a stop. Wilson was arrested after officers found him lying face down in the wooded area. At the time of the arrest, officers could not locate the black bag they saw Wilson carry from the car into the woods. However, the next day officers returned to the area and found the bag, which contained 745 grams of cocaine. Both men were detained for about twenty hours and released pending future indictments. On March 29, 1995, a federal indictment charging Wilson and Watkins with conspiracy and aiding and abetting possession was returned. Wilson was arrested on April 21, 1995, and Watkins surrendered on May 4, 1995.

Watkins filed a motion to dismiss based on pre-indictment delay. The court denied the motion. At trial, pursuant to a plea agreement, Hulett testified for the government. Among other things, Hulett testified that before the June 23 sale he had

_____

[1]The Honorable Scott O. Wright, United States Senior District Judge for the Western District of Missouri.

distributed cocaine to Watkins and Wilson on four occasions. In addition, the government introduced officers' testimony, photographs, and the bag and the cocaine retrieved from the wooded area.

The jury convicted Wilson and Watkins of the drug offenses. The court sentenced Wilson to 87 months imprisonment and Watkins to 97 months imprisonment.

**WILSON**

On appeal Wilson argues that the government's alleged delayed production, or non-production, of transcripts of Hulett's testimony in other criminal cases violated the omnibus trial order, Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, 18 U.S.C. § 3500, and the Fifth and Sixth Amendments.[2] However, Wilson has not preserved the issues for review. In May 1995 Wilson requested that the district court order that the government disclose the identity of the government's witness (Hulett) and impeachment material. A magistrate judge denied the motion, noting that the case was an "open file" case, and in the omnibus order the government had agreed to disclose Hulett's identity and Jencks material ten days before trial. According to Wilson, in July 1995 he requested transcripts of testimony given by Hulett and two law enforcement officers in three cases arising from the alleged conspiracy involving Hulett. On August 8, 1995, the government provided several of the requested transcripts.

Trial began on August 15, 1995. Before the jury was called in, Wilson complained to the court that the government had violated the omnibus order by either disclosing the requested transcripts late or not at all. Counsel, however, informed the court that he

---

[2]Among other trials, Hulett testified as a government witness in United States v. Randolph, 1996 WL 688795, at *1 (8th Cir. Dec. 3, 1996).

was able to obtain four of the requested transcripts from the clerk's office.  In response to the court's inquiry regarding requested relief for the alleged violations, counsel "ask[ed] for a delay so we may go over these four additional transcripts . . . in order to obtain proper impeachment material of witnesses at this trial."  The court told counsel he would be provided with "an opportunity to complete whatever it is you may not have completed" and an opportunity to make a record of his objections.  After Hulett's direct examination on August 16, the district court told counsel it would take a long recess to allow him to make a record regarding his discovery complaints.  Counsel indicated an extended recess was agreeable.  After the recess, without the presence of the jury, the court announced: "[D]efendants' counsel in this case have agreed they have been given all the material that they asked for and they have no further requests as of noon today."  The court then stated: "So all these prior matters on this subject are mooted by this statement."  Counsel did not object and cross-examined Hulett.  In this circumstance, it is clear that Wilson has failed to preserve the discovery issues for review.  See United States v. Warfield, 97 F.3d 1014, 1024 (8th Cir. 1996).  Indeed, counsel expressly waived review of the issues.

Even if Wilson had preserved the issues for review, his arguments are without merit.[3]  As a general rule, we review discovery matters for an abuse of discretion.  United States v. Byrne, 83 F.3d 984, 990 (8th Cir. 1996).  Assuming, without deciding, that the government failed to comply with the discovery order, the district court cannot be faulted for granting Wilson's

_____

[3]Wilson has filed a motion to supplement the record on appeal. To the extent Wilson seeks to supplement it with material filed in the district court, we grant the motion.  We remind Wilson that "[m]ere speculation that a government file may contain Brady material is not sufficient to require a remand . . ., much less reversal for a new trial."  United States v. Pou, 953 F.2d 363, 366-67 (8th Cir.) (internal quotation omitted), cert. denied, 504 U.S. 926 (1992).

-4-

request for time to review the materials and for providing him the opportunity to make a record of his complaint.  See Fed. R. Crim. P. 16(d)(2) (if party fails to comply with discovery order, court may grant such relief "it deems just under the circumstances").

Wilson's Brady claim must also fail.  "Where the prosecution delays disclosure of evidence, but the evidence is nonetheless disclosed during the trial, Brady is not violated."  United States v. Gonzales, 90 F.3d 1363, 1368 (8th Cir. 1996).  In addition, "the government need not disclose evidence available to the defense from other sources or evidence already possessed by the defendant[]."  Id.  As to the Jencks Act claim, "[a]lthough in many cases the government freely discloses Jencks Act material to the defense in advance of trial," contrary to Wilson's suggestion on appeal, "the government may not be required to do so."  United States v. White, 750 F.2d 726, 729 (8th Cir. 1984).  Also, without merit are Wilson's constitutional claims.  See, e.g., United States v. Rabins, 63 F.3d 721, 725-26 (8th Cir. 1995) (though government failed to disclose positive drug test of cooperating witness, no Sixth Amendment violation where jury was informed of witness' plea agreement, previous drug use, and possible bias), cert. denied, 116 S. Ct. 1031 (1996).  In this case, both Wilson and Watkins vigorously cross-examined Hulett regarding, among other things, his plea agreement and role in other drug offenses.

Wilson next argues that the district court erred in admitting a coconspirator's statement under Fed. R. Evid. 801(d)(2).  The district court did not err.  Indeed, the court followed United States v. Bell, 573 F.2d 1040 (8th Cir. 1978), which sets forth procedures regarding admissibility of statements under Rule 801(d)(2).  The district court "conditionally admitt[ed] the statement" subject to objection, and "at the conclusion of all the evidence made an explicit determination for the record" that the government had proved by a preponderance of the evidence that "the statement was made by a coconspirator during the course and in

furtherance of the conspiracy."  Id. at 1044.  The record amply supports the district court's Bell ruling.

Last, Wilson challenges the sufficiency of the evidence, asserting that Hulett's testimony was incredible.  However, it was the jury's function to assess Hulett's credibility.  United States v. McCarthy, 97 F.3d 1562, 1571 (8th Cir. 1996).  Although "we decline to invade the province of the jury as [Wilson] would have us do[,]" id. (internal quotation omitted), we note that Hulett's testimony concerning the events of June 23 was corroborated by the officers' testimony, surveillance photographs, and physical evidence.  In addition, Wilson's flight was evidence of "consciousness of guilt, and thus guilt itself."  United States v. Clark, 45 F.3d 1247, 1250 (8th Cir. 1995) (internal quotation omitted).

**Watkins**

Watkins argues that the district court erred in denying his motion to dismiss.  Watkins alleges that the delay between his June 1993 arrest and March 1995 indictment violated the Speedy Trial Act, 18 U.S.C. § 3161(b), which provides that "[a]ny . . . indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."  He also claims the delay violated the Sixth Amendment speedy trial guarantee.  His statutory and constitutional claims are without merit.  As to his statutory claim, his June 1993 arrest did not trigger the Speedy Trial Act clock.  Under section 3161(b) "[t]he right to a speedy trial on a charge is triggered by arrest only where the arrest is the beginning of continuing restraints on defendant's liberty imposed in connection with the formal charge on which the defendant is eventually tried."  United States v. Stead, 745 F.2d 1170, 1172 (8th Cir. 1984).  In other words, as in the instant case, "the protections of the Speedy Trial Act are not triggered by an arrest when the arrested person is

-6-

immediately released without formal charge." Id. See also United States v. Miller, 23 F.3d 194, 199 (8th Cir.) ("The Speedy Trial Act requires dismissal as a sanction for excessive pre-indictment delay when the arrest is based on a charge that is contained in a complaint filed against the defendant."), cert. denied, 115 S. Ct. 207 (1994). In addition, because Watkins was released pending indictment and without "other substantial restrictions on [his] liberty," the delay did not violate his Sixth Amendment rights. See United States v. Loud Hawk, 474 U.S. 302, 312 (1986).[4]

Watkins also argues that the district court erred in refusing to grant his request for a two-level minor participant reduction under U.S.S.G § 3B1.2(b).[5] On appeal, we review the district court's denial for clear error, United States v. Thompson, 60 F.3d 514, 517 (8th Cir. 1995), keeping in mind that Watkins had "the burden of proving his eligibility for a decrease in the base offense level." United States v. Carrazco, 91 F.3d 65, 67 (8th Cir. 1996). Watkins argues that he was entitled to the reduction because he was less culpable than Wilson. He is incorrect. "A defendant who is concededly less culpable than his codefendants is not entitled to the minor participant reduction if that defendant was 'deeply involved' in the criminal acts." Thompson, 60 F.3d at 518 (quoting United States v. West, 942 F.2d 528, 531 (8th Cir. 1991)). In this case, there was evidence that Watkins was "deeply

---

[4]The district court also rejected Watkins' claim that the delay violated his Fifth Amendment due process rights. On appeal, he does not appear to raise a Fifth Amendment issue. In any event, the district court correctly rejected the claim. As the court held, Watkins had not proved that the delay had "actually and substantially prejudiced the presentation of [his] defense." United States v. Miller, 20 F.3d 926, 931 (8th Cir.), cert. denied, 115 S. Ct. 226 (8th Cir. 1994).

[5]At sentencing, Watkins only requested a two-level reduction for being a minor participant. We therefore need not address his arguments on appeal that he was entitled to a four- or three-level reduction under section 3B1.2. However, Watkins' arguments are without merit.

involved."  As the government notes, Hulett testified that Watkins was at Wilson's side during each of the transactions, that "they were in it together," and that Watkins was either Wilson's right-hand man or bodyguard.  We have observed that "[p]articipants in a conspiracy to distribute drugs often have distinct roles.  Those differences are not always relevant in determining sentences." United States v. Logan, 49 F.3d 352, 360 (8th Cir. 1995).  In addition, Watkins drove Wilson to at least three of the drug transactions and the importance of his role as a driver was demonstrated during the June 23 chase.  See United States v. Rodamaker, 56 F.3d 898, 904 (8th Cir. 1995) (although wife may have been less culpable than husband, no minor participant reduction because she had "important role" in scheme).

Accordingly, the judgments of the district court are affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.